# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| KENNETH. M REVELL | CIVIL ACTION NO. 21-882 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| PRINCE PREFERRED HOTELS SHREVEPORT, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is Plaintiff Kenneth Revell's ("Revell") motion for default judgment[1] against Defendants, Prince Preferred Hotels Shreveport, L.L.C. ("Prince") and Reliance Hotel Group, L.L.C. ("Reliance") (collectively, "Defendants").

## BACKGROUND

In September 2018, Revell began working for Prince's hotel as a night auditor in Shreveport, Louisiana.[2] A year later, he was promoted to assistant manager.[3] Soon after, Reliance took over as the property management company for the business, and Defendants posted an opening for the hotel's general manager position. Revell applied, but Defendants never responded to his application.[4] In November 2019, Revell learned that Reliance hired a white male as the hotel's new general manager.[5] In March 2020, that manager resigned.[6]

---

[1] Record Document 13.
[2] Record Document 1 at 2.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

Revell claims that Defendants then called upon him to "assume all of the duties of a general manager," which, for Revell, required long hours.[7] Revell acquiesced to the arrangement, but Defendants never promoted him or increased his salary.[8] Defendants began advertising for the open management position again in April 2020. Revell heard nothing until June 2020, when Defendants told Revell that they had hired a white female for the role.

Revell claims this new manager proved "divisive."[9] At the peak of the COVID-19 outbreak, Revell claims the manager refused to wear a face mask when interacting with the public.[10] As Revell explains, such conduct contravened the Louisiana Governor's 2020 executive order requiring that face masks be worn in any place of public accommodation. Revell contacted the Vice-President of Operations for Reliance by telephone and email.[11] The following day, Defendants terminated Revell's employment.[12] Revell now brings this suit against Defendants for race-based promotion denial in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. Section 1981.[13] He also seeks overtime pay and liquidated damages allegedly owed to him under the Fair Labor Standards Act and damages arising from unlawful reprisal under Louisiana Revised Statute Section 23:967.[14] After filing his

---

[7] *Id.*
[8] *Id.*
[9] *Id.* at 4.
[10] *Id.*
[11] *Id.*
[12] *Id.* at 5.
[13] *Id.* at 5–6.
[14] *Id.* at 7–8.

complaint, Defendants never appeared in Court, and the Clerk issued an entry of default.[15] Revell now moves for default judgment.

## DEFAULT JUDGMENT STANDARD

A default judgment involves three steps: (1) default, (2) entry of default, and (3) default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996) (citing Fed. R. Civ. P. 55(a)).

> A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules. An entry of default is what the clerk enters when the default is established by affidavit or otherwise. After defendant's default has been entered, plaintiff may apply for a judgment based on such default. This is a default judgment.

*Id.* (citations omitted). Here, Defendants failed to plead or otherwise defend against this lawsuit. Additionally, Revell obtained an entry of default judgment from the Clerk against Prince and Reliance.[16] Thus, the first two requirements for default are met.

By defaulting, a defendant admits to the plaintiff's well-pleaded allegations of fact, at least with respect to liability. *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (citing *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Even though the facts are admitted, the plaintiff still has the burden of showing that those facts give rise to a viable cause of action. *See Nishimatsu*, 515 F.2d at 1206 ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law."). In addition, a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). No party is entitled to

---

[15] Record Document 9.
[16] *Id.*

a default judgment as a matter of right, even where the defendant is technically at fault. *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001) (per curiam) (quoting *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996)). The disposition of a motion for default judgment ultimately rests within the district court's sound discretion. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

## ANALYSIS

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability." *United States ex rel. M-CO Constr. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). Nevertheless, a default judgment does not establish the amount of damages. *Id.* Therefore, the Court must determine (1) whether Defendants are liable to Revell and then (2) what amount in damages, if any, are owed.

### I. Liability

In determining whether to enter a default judgment, the Court must consider whether such a remedy is appropriate under the circumstances. *See Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations."). Factors relevant to this inquiry include the following:

> [W]hether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obligated to set aside the default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

In this case, no material issues of fact are disputed because Defendants admitted to Revell's well-pleaded allegations by failing to file any pleadings responsive to his complaint. *See Jackson*, 302 F.3d at 525. Nothing in the record suggests that Defendants' failure to respond results from a good faith mistake or excusable neglect. Defendants' failure to respond also offsets the harshness of this procedure. Finally, the Court knows of no facts that would provide good reason to set aside a default judgment if it were challenged. For these reasons, the Court finds that the circumstances of this case warrant a default judgment. On this basis, the Court must next determine whether Revell's complaint establishes a cause of action against Defendants. *See Nishimatsu*, 515 F.2d at 1206.

### a. *Overtime Compensation under the Fair Labor Standards Act*

First, Revell alleges that Defendants refused to pay him overtime wages, violating the Fair Labor Standards Act ("FLSA"). Under the FLSA, a non-exempt employee who works more than forty hours in one week must be paid overtime at a rate of no less than one and one-half times his "regular rate" of pay. 29 U.S.C. § 207(a)(1). Congress enacted the FLSA so that each employee covered by the statute would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (cleaned up).

As a threshold matter, Revell says he is a non-exempt employee entitled to the FLSA's protections. For a salaried employee to qualify under the statute, he or she "must be compensated on a salary basis" of no more than $684 per week. 29 C.F.R. § 541.600.

Attached to Revell's motion are several pay stubs showing that he made $673 a week for the period he seeks to recover overtime compensation.[17] Revell thus comes within the FLSA's purview based on his allegations and supporting records. *Id.*

To state a claim under the FLSA, a claimant must allege facts that show: (1) that there existed an employer-employee relationship during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the coverage of the FLSA; (3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

First, courts apply the economic reality test to analyze whether an employer-employee relationship existed under the first element. *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012). The test evaluates "whether the alleged employer: (1) possessed the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* at 355 (cleaned up).

Here, Revell alleges that he was an employee of both Defendants from 2019 until 2020.[18] He explains that Prince paid his wages, issued his W-2s, and owned the hotel, while Reliance controlled the hiring, promotions, assignments, work schedules, discipline, and termination.[19] Such allegations, taken as true, are enough to establish Defendants as

---

[17] Record Document 13-4 at 19–30.
[18] Record Document 1 at 2 & 5.
[19] Record Document 13-3 at 2.

joint employers under the FLSA. See Watson v. Graves, 909 F.2d 1549, 1556 (5th Cir. 1990).

Second, Revell alleges that he engaged in work activities covered under the statute. In so pleading, Revell claims that Defendants operated an enterprise that lodged out-of-state guests. As a result, Revell contends that his work for Defendants affected "interstate commerce" and that Defendants had a "gross volume of sales" of more than $500,000. See 29 U.S.C. § 203(s)(1)(A)(i-ii).[20] Such allegations establish that the FLSA covered Revell's work activities. See Montoya Garcia v. Overnight Cleanse, LLC, No. 3:18-cv-3386, 2021 WL 902494, at *5 (N.D. Tex. Jan. 22, 2021), report and recommendation adopted, No. 3:18-cv-3386, 2021 WL 1012146 (N.D. Tex. Mar. 9, 2021).

Finally, Revell claims that Defendants refused to pay him time-and-a-half for the weeks that he worked more than forty hours from January 2020 through the termination of his employment in June 2020. Following the resignation of the general manager in March 2020, Revell says that he assumed even more responsibilities, requiring long work hours.[21] In total, Revell alleges he spent more than five-hundred hours performing unpaid overtime work. Revell also claims that Defendants knew of the overtime law but exploited Revell's willingness to work by underpaying him.[22] Taking all of Revell's allegations as true, Revell has successfully alleged that Defendants violated the FLSA. Id.

---

[20] Record Documents 1 at 6 & 13-3 at 5.
[21] Record Document 1 at 3.
[22] Id. at 7.

### b. Discrimination Under Title VII & 42 U.S.C. Section 1981

Next, Revell alleges that Defendants are liable for unlawful discrimination for their failure to promote him in violation of Title VII and Section 1981. The Fifth Circuit analyzes "employment discrimination claims arising under both 42 U.S.C. § 1981 and Title VII" under the same framework. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022). To plead a failure to promote claim, a plaintiff must allege (1) that he is a member of a protected class, (2) that he sought and was qualified for an open position, (3) that he was rejected from the position, and (4) that the employer hired a person outside of his class. *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015) (citing *Williams-Boldware v. Denton Cnty., Tex.*, 741 F.3d 635, 643 (5th Cir. 2014)).

Here, Revell alleges that (1) he is a Black male and so belongs to a protected class; (2) he was qualified for the general manager position because he had significant experience working at the hotel; (3) Defendants rejected his applications for the general manager role on two separate occasions and failed to respond to his promotion inquiries; and (4) Defendants first selected a white male for a general manager in November 2019 and a white female for the position in June 2020.[23] Considering these allegations, the Court concludes Revell has pled a claim under Title VII and Section 1981 for Defendants' failure to promote.

### c. Unlawful Reprisal Under La. R.S. 23:967

Finally, Plaintiff brings a claim under Louisiana's Whistleblower Statute, Louisiana Revised Statute Section 23:967. Revell alleges that Defendants violated this statute when

---

[23] *Id.* at 3–4.

they terminated him for reporting his coworker's non-compliance with Louisiana's COVID-19 mandates in June 2020. To state a whistleblower claim, a plaintiff must allege (1) the defendant engaged in a prohibited workplace act or practice; (2) the plaintiff advised the defendant of the violation; (3) the plaintiff then refused to participate in the prohibited practice or threatened to disclose the practice; and (4) the plaintiff was fired as a result of his refusal to participate in the unlawful practice or threat to disclose the practice. *Hale v. Touro Infirmary*, 2004-0003 (La. App. 4 Cir. 11/3/04); 886 So. 2d 1210, 1216.

In June 2020, the Louisiana Governor issued an executive order stating that all employees of businesses "shall wear face coverings at all times if interacting with the public."[24] This 2020 executive order had "the force and effect of law." *5216 Operations, LLC v. Dep't of Revenue*, 21-520 (La. App. 5 Cir. 4/6/22); 339 So. 3d 48, 54 (citing La. R.S. 29:724(A)). Nevertheless, Revell alleges that Defendants did not require its employees to follow the Governor's directive. Specifically, when Defendants' property manager interacted with the public, she did so without face coverings.[25] When Revell asked her to comply with the Governor's mandate, she "refused."[26] In response, Revell contacted Reliance's executive management.[27] Because he complained of his coworker's failure to wear a mask and refused to condone the practice, Revell says Defendants terminated his employment.[28] Based on Revell's factual allegations, he has alleged a

---

[24] Record Document 13-4 at 5.
[25] Record Document 1 at 4–5.
[26] *Id.* at 4.
[27] *Id.*
[28] *Id.* at 5.

9

plausible whistleblower claim under Louisiana law. *See Lightell v. Walker*, 527 F. Supp. 3d 866, 893 (E.D. La. 2021).

## II. Damages

Having established that Defendants are liable to Revell, the Court must next calculate damages. Rule 55(b) allows a court to conduct an evidentiary hearing if one is needed to determine the amount of those damages. Fed. R. Civ. P. 55(b). "As a general proposition, in the context of a default judgment, unliquidated damages normally are not awarded without an evidentiary hearing." *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). Still, the rule "is subject to an exception where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Id.* Indeed, an evidentiary hearing is unwarranted when damages can be calculated by reference to the pleadings and supporting documents. *Id.* at 311. Here, Revell requests overtime wages, back pay, attorneys fees, and costs. Each of these sums is capable of mathematical calculation such that no evidentiary hearing is needed to determine the appropriate award. *See Richardson v. Salvation Army, S. Territory, USA*, 161 F.3d 7, 7 (5th Cir.1998) (per curiam) ("The court may rely on detailed affidavits or documentary evidence, supplemented by the judge's personal knowledge, to evaluate the proposed sum.").

Even so, Revell has not included his salary information from 2019, the year he was denied his first promotion.[29] In this case, the Court concludes that more detailed 2019 salary information is required to calculate damages accurately. Additionally, Revell

---

[29] Revell has, however, enough evidence documenting his income for the years 2020–2021. Record Document 13-4 at 19–30.

requests $16,593 in attorney's fees and costs but has not submitted any billing records supporting that request. Revell must submit this information by **April 30, 2023**, so the Court may appropriately calculate damages, attorney's fees, and costs.

## CONCLUSION

For the reasons outlined above, **IT IS ORDERED** that Revell's motion for default[30] judgment against Defendants Prince Preferred Hotels Shreveport, L.L.C. and Reliance Hotel Group, L.L.C. is **GRANTED** on the issue of liability. Revell shall submit the supporting documentation detailed above by **April 30, 2023,** to meaningfully assess the amount of judgment.

**THUS DONE AND SIGNED** this 31st day of March, 2023.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[30] Record Document 13.