UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| KENNETH M. REVELL | CIVIL ACTION NO. 21-882 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| PRINCE PREFERRED HOTELS SHREVEPORT, LLC, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

On March 31, 2023, this Court granted Plaintiff, Kenneth Revell's ("Revell"), motion for default judgment against Defendants, Prince Preferred Hotels Shreveport, L.L.C. ("Prince") and Reliance Hotel Group, L.L.C. ("Reliance") (collectively, "Defendants"). For the reasons outlined in this Court's prior memorandum ruling, the Court found that the Defendants are liable for violating the Fair Labor Standards Act ("FLSA"), unlawfully discriminating against Revell in violation of Title VII and Section 1981, and violating Louisiana's Whistleblower Statute, Louisiana Revised Statute 23:967. Record Document 15. However, the Court lacked sufficient information to calculate damages, attorney's fees, and costs. *Id.* at 10-11. Finding that Revell has now submitted the relevant documentation, the Court assesses the amount of the judgment below.

### I. Damages

A. FLSA

Since Defendants were found liable under the FLSA, Revell is entitled to unpaid overtime wages and statutory liquidated damages. The FLSA provides that for each hour worked over forty in a workweek, an employee is entitled to an overtime wage of not less than one and one-half the employee's regular rate. 29 U.S.C. § 207(a). An employer that

violates the FLSA is liable to the employees affected for any unpaid overtime compensation and "an additional equal amount as liquidated damages." *Id.* § 216(b).

Revell testifies that he worked around 56 to 80 hours per week from January 4, 2020, through May 30, 2020, and supports his assertion with his work schedules from this period. Record Document 13-3 at 6. In total, he testifies that he had 575 hours of unpaid overtime work. *Id.* at 7. Revell claims that he was paid an hourly rate of $16.83 and attaches his check stubs from his employment. *Id.* Defendants are therefore liable for $14,513.00 in unpaid overtime wages to Revell ($25.24 [overtime premium wage including regular time at $16.83, plus half that regular time at $8.41] multiplied by 575 [overtime hours worked without any additional pay]).

Revell is also entitled to an award of statutory liquidated damages in an amount equal to his unpaid overtime wages. The court may decline to award the otherwise mandatory liquidated damages if the employer demonstrates that its failure to pay overtime wages was in good faith and based on "reasonable grounds for believing that [the] act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. In his affidavit in support of his motion for default judgment, Revell says that Defendants were aware of the minimum salary requirements necessary to maintain an exemption for salaried employees under the FLSA and still refused to increase his salary. Record Document 13-3 at 7. Because Defendants have failed to appear or present any defense to Plaintiff's FLSA claims, an award of liquidated damages equal to the amount of unpaid overtime wages is appropriate. Therefore, Revell is awarded $29,026 in damages for his FLSA claim ($14,513 in unpaid overtime wages and $14,513 in statutory liquidated damages).

B. Title VII and Section 1981

As noted above, Defendants are also liable under Title VII and Section 1981 for discriminating against Revell after refusing to promote him to general manager. Revell is entitled to back pay under Title VII, and these types of damages are calculated at the wage rate that the plaintiff would have received but for the unlawful discrimination and are reduced by "[i]nterim earnings or amounts earnable with reasonable diligence." *See* 42 U.S.C. § 2000e-5(g)(1). The aim of this equitable relief under Title VII is to "make the victims of unlawful discrimination whole." *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 230 (1982).

Revell alleges in his complaint that he first experienced employment discrimination when he was denied the general manager position in November 2019. Record Document 1 at 3. According to Revell, the general manager position originally paid $62,000 annually. *Id.* at 4. This equates to around $1,192 each week. The general manager salary increased on May 8, 2020, to $72,000, which equals about $1,385 each week. *Id.* Revell was again denied promotion on June 17, 2020. *Id.* Meanwhile, Revell earned the same salary, $35,000 annually or about $673 per week, from November 2019 until his termination on June 23, 2020. *Id.* at 5. Based on the following calculation, Revell is entitled to $17,766. As for the period between November 11, 2019, and May 8, 2020, Revell, as a general manager, would have made $30,992 ($1,192 per week x 26 weeks = $30,992). For the period of May 2020 through June 2020, Revell would have made $8,310 ($1,385 per week x 6 weeks = $8,310). This totals $39,302 ($30,992 + $8,310). However, from November

2019 through June 2020, Revell actually earned $21,536 ($673 per week x 32 weeks = $21,536). Thus, Revell's total back pay equals $17,766 ($39,302 - $21,536 = $17,766).

C. Punitive Damages

Revell also requests $15,000 in punitive damages. "A Title VII plaintiff may recover punitive damages upon proof that the defendant acted with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 467 (5th Cir. 2013) (citing 42 U.S.C. § 1981a(b)(1)). "This is a higher standard than the showing necessary for compensatory damages, satisfied in 'only a subset of cases involving intentional discrimination.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 534 (1999)). "The terms 'malice' or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." *Kolstad*, 527 U.S. at 535.

Here, Revell fails to allege or point to evidence that Defendants acted with knowledge that their actions may violate federal discrimination laws. Though Revell argues Defendants exploited him for work hours, he provides no allegations of the Defendants' "awareness that [they were] engaging in discrimination." *See id.* Taking all facts in the complaint as true, the Court finds that Revell has failed to allege anything supporting an award for punitive damages under Title VII.

D. Louisiana Revised Statute § 23:967

If a court finds a violation under Louisiana's Whistleblower Statute, a plaintiff may recover "damages, reasonable attorney fees, and court costs." La. R.S. § 23:967(B). Louisiana's Whistleblower Statute permits damages, including "compensatory damages, back pay, benefits, reinstatement, reasonable attorney fees, and court costs resulting from

the reprisal." *Id.* § 23:967(C)(2). In this context, Revell seeks back pay from the date of his termination, June 23, 2020, through the end of 2021.[1] Had Defendants not fired Revell, he would have made $53,167 ($673 x 79 weeks = $53,167). After his termination, Revell was dependent on unemployment and side jobs. The documents Revell submitted with his motion show that his earnings totaled $28,222. Record Document 13-4 and Record Document 16. Therefore, Revell is entitled to $24,945 in back pay ($53,167 - $28,222 = $24,945).

## II. Attorney's Fees

Revell also requests attorney's fees. Under each of the statutes above, a district court may award reasonable attorney's fees and costs to the prevailing party. *See* 29 U.S.C. § 216(b); 42 U.S.C. § 2000e-5; Louisiana Revised Statute § 23:967(B). The district court has discretion in determining what is reasonable, but it cannot decline an award of attorney's fees in an FLSA action without making such a determination. *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 249 (5th Cir. 2016). In order to calculate the proper amount of attorney's fees to be awarded, district courts use the lodestar method. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). Under the lodestar method, the court determines the reasonable hourly rates for the participating attorneys and the reasonable number of hours expended on the litigation. *See id.* These two figures are multiplied together to arrive at the lodestar. *See id.* Reasonable fees "are to be calculated according to the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Fifth Circuit has stressed that the lodestar is presumptively reasonable

---

[1] Revell has provided detailed financial information for 2020 and 2021.

and should be adjusted upward or downward only in exceptional circumstances, and only if an analysis of the twelve factors set forth in *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974), so warrants. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

The twelve *Johnson* factors are: 1) the time and labor required for the litigation; 2) the novelty and complexity of the questions; 3) the skill required to properly litigate the issues; 4) whether the attorneys had to forego other work to litigate the case; 5) the attorney's customary fee; 6) whether the fee is fixed or contingent; 7) whether any time constraints were imposed by the client or the circumstances of the case; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) whether the case was "undesirable"; 11) the nature and length of the attorney-client relationship; and 12) awards made in similar cases. *Johnson*, 488 F.2d at 717–19. The lodestar may not be adjusted due to a *Johnson* factor, however, if the creation of the lodestar amount already took that factor into account; to do so would be impermissible double counting. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 800 (5th Cir. 2006) "The Supreme Court has twice made clear that the most critical factor in determining the reasonableness of a fee award in a civil rights suit is the degree of success obtained." *Migis*, 135 F.3d at 1047 (citing *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal citations omitted).

A. Reasonable Hourly Rate

Revell seeks to recover $16,564 in attorney's fees. Revell submits the affidavit of his attorney, Pamela R. Jones ("Jones"), as well as a client ledger, as evidence of the

attorney's fees and costs that he incurred. Record Documents 13-2 and 16-1. In her affidavit, Jones declared that it is her regular practice to begin charging clients an hourly rate of $365 upon filing suit. Record Document 13-2 at 2. "An attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates and the rate is not contested." *Campbell v. Harold Miller, Jr. Trucking & Paving, LLC*, No. 6:13-2840, 2014 WL 6389567, at *2 (W.D. La. Nov. 13, 2014). Courts should calculate attorney's fees based on the prevailing market rates in the relevant community, which is the judicial district in which the litigation occurred. *Comar Marine Corp. v. Raider Marine Logistics, LLC*, No. 6:09-CV-1438, 2016 WL 99208, at *4 (W.D. La. Jan. 7, 2016), *report and recommendation adopted*, No. CV 6:09-1438, 2016 WL 6208695 (W.D. La. Oct. 24, 2016). The burden is on the party seeking attorney's fees to produce evidence indicating "the requested rates are in line with those prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Wheeler v. Mental Health & Mental Retardation Auth. of Harris Cnty., Tex.*, 752 F.2d 1063, 1073 (5th Cir. 1985).

     Jones provided a sworn statement that she has been working as a full-time labor and employment attorney since 1992. Record Document 13-2 at 1. According to the billing records submitted by Revell, Jones charged an hourly rate of $365.00 for her services, which is allegedly her usual hourly rate. Jones further claims this is in line with prevailing rates in this area by noting that Allison Jones, another labor and employment attorney at Jones' firm, charges a similar rate for employment law legal education services. *Id.* at 1-

3. As additional support, Jones highlights a case in the Middle District of Louisiana in which the court found $375 to be a reasonable average rate for an employment defense attorney with twenty-two years of experience. *See Campbell v. Verma Sys., Inc.,* No. 21-272-BAJ-RLB, 2022 WL 879497, at *3 (M.D. La. Mar. 23, 2022). The relevant legal market for purposes of determining prevailing market rates, however, is the judicial district where the litigation occurred. *Comar Marine Corp.,* 2016 WL 99208, at *4.

Nonetheless, upon its own survey of the literature and familiarity with prevailing rates in this area, the Court finds that $365, albeit on the upper end, is within the prevailing market rates in this district. *See Olive v. Tubbs,* No. 3:22-CV-05205, 2023 WL 6420794, at *9 (W.D. La. Sept. 29, 2023) (awarding an attorney with fifty years of litigation experience $375 per hour and an attorney with ten years of experience $250 per hour); *see also Migdon v. 171 Holdings LLC,* No. 2:18-CV-00160, 2022 WL 4110956, at *3 (W.D. La. Sept. 8, 2022) (approving an hourly rate of $275 for the lead attorney in an employment discrimination case). Given that Jones has thirty-three years of litigation experience and nearly all of this experience pertains to employment law, labor law, and civil rights cases, *see* Record Document 13-2 at 1, the requested rate of $365 is reasonable.

The submitted ledger also claims hours listed at $95 per hour that are attributed to "Lawyer: PRJh." Counsel provides no explanation for who this is; however, based on the Court's own review of the record as to the work performed by "PRJh," the $95 appears to be the rate of a paralegal. The Court finds that this is a reasonable, fair paralegal rate.

B. Reasonable Number of Hours

The party requesting an award of attorney's fees bears the burden of demonstrating the reasonableness of the hours billed and must prove that billing judgment was exercised. *See Saizan*, 448 F.3d at 799. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.* All "excessive, duplicative, or inadequately documented" time should be eliminated from an attorney's fee award. *Watkins*, 7 F.3d at 457. "The hours surviving this vetting process are those reasonably expended on the litigation." *Id.*; *see also Alberti v. Klevenhagen*, 896 F.2d 927, 930 (5th Cir. 1990) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off."); *Leroy v. City of Hous.*, 831 F.2d 576, 585-86 (5th Cir. 1987) (explaining that billing records that lack explanatory details are unacceptable). "The proper remedy when there is no evidence of billing judgment is to reduce the hours awarded by a percentage intended to substitute for the exercise of billing judgment." *Walker v. U.S. Dep't of Housing and Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

In the instant case, Jones claims by affidavit and supporting documentation fees in the amount of $16,314 plus $250 for the initial consultation fee, for a total of $16,564. These fees include Jones' fixed initial fee of $3,750 plus time outlined in the ledger as to work performed by "PRJ" at a rate of $365 per hour and by "PRJh" at a rate of $95 per hour. Based on the detailed supporting affidavit, the Court finds that this amount is reasonable and awards $16,564 in attorney's fees. The Court has considered the *Johnson* factors in awarding this amount.

### III. Costs

Revell also requests $886.28 in costs for FedEx postage, filing the complaint, process servers, Public Access to Court Electronic Records ("PACER") fees, and photocopies. The Court may award costs other than attorney's fees to the prevailing party. Fed. R. Civ. P. 54(d)(1). Generally, federal courts may only award costs listed in 28 U.S.C. § 1920, absent contrary statutory or contractual authorization. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 445 (1987). Recoverable costs include:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The Fifth Circuit has held that in Title VII actions specifically, "'reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services,' such as postage, photocopying, paralegal services, long distance telephone charges, and travel costs" are recoverable. *Mota v. Univ. of Tex. Hous. Health Sci. Ctr.,* 261 F.3d 512, 529 (5th Cir. 2001) (citing *Mennor v. Fort Hood Nat'l Bank,* 829 F.2d 553, 557 (5th Cir. 1987)). Costs for private process servers are not recoverable, absent exceptional circumstances. *Zastrow v. Houst. Auto M. Imports Greenway, Ltd.,* 695 F. App'x 774, 780 (5th Cir. 2017).

A. Cost of filing the complaint

The client ledger produced by Revell shows a charge of $402.00 for filing the complaint. Record Document 16-1 at 5. A filing fee is a fee of the clerk or marshal and is

therefore included in 28 U.S.C. § 1920. Thus, the Court will allow Revell to recover the $402.00 filing fee.

B. FedEx postage

The client ledger further indicates five charges labeled as "FedEx" for $42.30, $52.57, $23.26, $30.93, and $74.46. Although the Fifth Circuit has stated that postage may be recoverable in Title VII actions, the expenses must be *reasonable. See Mota,* 261 F.3d at 529 (citing *Mennor,* 829 F.2d at 557). The Court finds that in this case these are reasonable fees in the course of supplying legal services.

C. Process servers

The client ledger reflects that Jones paid $95.00 to "Process Server AZ," $106.98 to "Process Server CA," $152.20 to "T. Cassisa Process Server," and $75.00 to "Process Servers PI Ducks." *Id.* at 5-6. However, as noted above, these fees are only recoverable in exceptional circumstances. *See Zastrow,* 695 F. App'x at 780. In this case, the Court finds that such exceptional circumstances do exist. As to at least one of the Defendants, the record reflects that the Louisiana Secretary of State would not accept service.

D. Photocopies

The client ledger reflects a total of $42.80 expended on photocopies. Pursuant to § 1920(4), copies are recoverable when they are necessarily obtained for use in the case. However, Revell has produced no evidence showing that these copies were necessarily obtained for use in the case; thus, the Court has discretion to refuse to award these costs. *See Migis,* 135 F.3d at 1049 (affirming the district court's refusal to award costs for the plaintiff's videotaped deposition on the grounds that the plaintiff failed to show it was

"necessarily obtained for use in the case."). However, given the amount of paperwork and documentation, like payment stubs and W-2 forms, needed to be successful on this claim, the Court finds these fees to be reasonable out-of-pocket expenses contemplated by *Motas*. Thus, the Court will allow Revell to recover the $42.80 expended on copies.

E.  PACER

The client ledger shows a total of $17.30 for PACER fees. The Fifth Circuit has not ruled on whether PACER fees are recoverable costs, but it has noted a lack of consensus among the district courts. *Zastrow*, 695 F. App'x at 780. This Court holds that such fees are necessary for the representation of a client, and therefore, will be allowed.

F.  Conclusion as to Costs

Based on the foregoing, Revell may recover the total amount of costs requested, which is $886.28.

**IV.   Pre-Judgment Interest**

In his complaint, Revell prays for "prejudgment interest on all state law claims." Record Document 1 at 8. Since this Court has jurisdiction over Revell's state law claim pursuant to 28 U.S.C. § 1637, pre-judgment interest is governed by state law. *See Crain v. E&M Operating, L.L.C.*, No. 18-CV-00548, 2019 WL 6770732, at *10 (W.D. La. Dec. 11, 2019) (finding that pre-judgment interest for the claims before the court pursuant to its supplemental jurisdiction were governed by Louisiana law); *Holmes v. Reddoch*, No. 19-12749, 2023 WL 5952189, at *1, *3 (E.D. La. Sept. 13, 2023) (noting that the court's previously entered judgment specifically provided for pre-judgment interest to be calculated pursuant to state law); *5G Studio Collaborative, LLC v. Dall. Uptown Hosp., LLC*,

No. 3:15-CV-2719-L, 2017 WL 4750697, at *2 (N.D. Tex. Oct. 20, 2017) ("When state law claims are before a federal court based on supplemental jurisdiction, state law governs the award of prejudgment interest."). Pursuant to Louisiana Revised Statute § 13:4203, "[l]egal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts." La. R.S. § 13:4203. Thus, Revell is entitled to receive pre-judgment interest from the date he filed his complaint, which was April 1, 2021.

## CONCLUSION

For the reasons stated above, Revell is awarded $29,026 in damages for his FLSA claim, $17,766 in back pay under Title VII, $24,945 in back pay under Louisiana Revised Statute § 23:967, $16,564 in attorney's fees, and costs of $886.28, along with pre-judgment interest from the date of judicial demand as set forth in Louisiana Revised Statutes §§ 13:4202 and 4203. A judgment closing this case and awarding damages and costs will be issued separately.

**THUS DONE AND SIGNED** this 1st day of August, 2024.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE